IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

BOXER X, a/k/a
STANLEY FARLEY,

    Plaintiff,

vs.

JIMMY CHAUNCEY; LARRY
MONTGOMERY, and
ROSCOE BELL,

    Defendants.

CIVIL ACTION NO.: CV606-039

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Valdosta State Prison in Valdosta, Georgia, filed an action pursuant to 42 U.S.C. § 1983 contesting certain conditions while he was housed at Georgia State Prison in Reidsville, Georgia. Defendants filed a Motion for Summary Judgment, and Plaintiff filed a Response. For the following reasons, Defendants' Motion for Summary Judgment should be **GRANTED** in part and **DENIED** in part.

## STATEMENT OF THE CASE

Plaintiff alleges that he was handcuffed and Defendants Chauncey and Montgomery escorted him down the hall from the holding pen to his dormitory. While moving Plaintiff down the hall, Defendant Bell allegedly stopped Plaintiff and told him that if he ever knocked on the glass again, he would physically assault Plaintiff. Plaintiff

AO 72A
(Rev. 8/82)

explained that this was the only way to get the officer's attention. After explaining this to Defendant Bell, Plaintiff contends that Defendant Bell became hostile and threatened to hit Plaintiff if the other Defendants did not get him out of his sight. Plaintiff then alleges that Defendant Chauncey stated "I'll take care of that for you Bell." (Compl., p. 2). Allegedly, Defendant Chauncey then let go of the cuffs and hit Plaintiff in the face, knocking him to the ground. Defendants Chauncey and Montgomery then kicked Plaintiff while he was on the ground while Defendant Bell stood by and said, "I don't care if you kill [him]." (Compl., p. 2). Plaintiff contends that he was unconscious and woke up in the prison's emergency room, where he was treated for injuries to his head, wrist, and shoulder. Plaintiff asserts that the Defendants' motivation for the use of excessive force was retaliation for Plaintiff's filing a grievance against Defendant Montgomery and a letter complaining about Defendant Chauncey. Plaintiff avers that, in order to cover up the incident and provide justification for the use of force, Defendants Bell and Chauncey filed false disciplinary reports against him. Plaintiff contends that he violated no rule and took no action that would warrant the use of such force.

Defendants contend Defendants Chauncey and Montgomery used only the amount of force necessary to subdue Plaintiff after he became insubordinate. Defendant Bell denies that he failed to intervene on Plaintiff's behalf in an excessive use of force incident. Defendants assert any actions they took were the result of Plaintiff's acts of insubordination and were not due to Plaintiff having filed a grievance or having written a letter. Finally, Defendants allege they are entitled to Eleventh Amendment

immunity to the extent Plaintiff seeks monetary damages against them in their official capacities.

## STANDARD OF DETERMINATION

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parties are entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving parties bear the burden of establishing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary

judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION TO AUTHORITY

I. **Excessive Use of Force**

Defendants contend Plaintiff began beating on the windows and doors of the holding pen. Defendant Bell contends he gave Plaintiff several direct orders to stop his "disruptive behavior", but Plaintiff refused to do so. (Doc. No. 45, p. 6). Defendants Chauncey and Montgomery assert that they came to the holding pen to escort Plaintiff to the L Building. Defendants Chauncey and Montgomery allege they handcuffed Plaintiff and immediately thereafter, he "renewed his insubordinate behavior directed at" Defendant Bell. (Id.). Defendants assert Plaintiff moved toward Defendant Bell in an aggressive manner and attempted to assault Defendant Bell. Defendant Chauncey avers he ordered Plaintiff to stop his behavior on several occasions, but Plaintiff did not. Defendants allege Plaintiff continued moving toward Defendant Bell and tried to snatch the handcuffs away from Defendant Chauncey. Defendants Chauncey and Montgomery allege they used hands-on force to regain positive control over Plaintiff. To do so, Defendant Chauncey asserts he secured the right side of Plaintiff's body with his hands, and Defendant Montgomery asserts he secured the left side of Plaintiff's body with his hands. Defendants Chauncey and Montgomery contend they placed Plaintiff face down on the concrete floor and that they used only the amount of force necessary to gain positive control over Plaintiff. Defendants also contend Plaintiff was taken immediately to the medical unit for a use of force examination. Defendants allege the

use of force medical report shows Plaintiff suffered swelling and discoloration to his right eye orbit, a 1.5 inch cut to his right brow, a quarter-sized scrape on his right shoulder with decreased range of motion, and swelling to his right wrist with decreased range of motion.

Plaintiff contends Defendants Chauncey and Montgomery used excessive force against him, and that the use of force was motivated by malice, was unprovoked, and was without penological justification. Plaintiff asserts Defendant Chauncey punched him and Defendants Chauncey and Montgomery stomped and kicked him while Plaintiff was on the floor. Plaintiff also asserts he was handcuffed and defenseless, he did not break any prison rules, and he did not resist or threaten Defendant Bell. Plaintiff alleges he was not charged with threatening, assaulting, or attempting to assault Defendant Bell, and Defendant Bell does not make any assertion in that regard in his factual statement. Plaintiff avers the injuries he received as a result of Defendants Chauncey's and Montgomery's excessive use of force were more than *de minimis*.

The Eighth Amendment's prohibition against the use of cruel and unusual punishment governs the amount of force that a prison official is entitled to use. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than a good-faith effort to maintain or restore discipline. Whitley v. Albers, 475

U.S. 312, 320-21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, the following factors are relevant: the need for the exercise of force, the relationship between the need for force and the force applied, and the extent of injury that the inmate suffered. Id. at 321. In other words, to establish a claim for excessive force, the plaintiff must show that (1) the defendants acted with a malicious and sadistic purpose to inflict harm, and (2) that more than a de minimis injury resulted. Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002).

Defendants Chauncey and Montgomery both submitted Affidavits in support of their position that they used only the amount of force necessary to regain positive control of Plaintiff after he attempted to assault Defendant Bell. Defendants Montgomery and Chauncey assert Plaintiff was handcuffed and that they were escorting Plaintiff back to his cell in L Building. According to Defendants Chauncey and Montgomery, Plaintiff snatched away from them and attempted to assault Defendant Bell. (Doc. No. 46, Ex. A, ¶ 4; Ex. C, ¶ 3). Defendant Chauncey alleges he thought Plaintiff was going to kick Defendant Bell, using his boot as a weapon. (Doc. No. 46, Ex. C, ¶ 3). Defendant Chauncey also alleges he gave Plaintiff "several direct orders to stop his disruptive behavior[, but] he refused and continued walking towards Defendant Bell[.]" (Id.) Defendant Chauncey asserts he secured Plaintiff's right wrist with his left hand and Plaintiff's right shoulder with his right hand and "secured the inmate on the floor." (Id. at ¶ 4). Defendant Montgomery asserts he secured Plaintiff's left wrist with his right hand and Plaintiff's left shoulder with his left hand and "secured the inmate face down on the concrete floor." (Doc. No. 46, Ex. A, ¶ 5). Defendants Chauncey and

Montgomery aver that Plaintiff was not punched at any time or kicked while he was on the ground. (Id. at ¶ 6; Ex. C, ¶ 5). Defendants Chauncey's and Montgomery's contentions are reaffirmed in the Use of Force Incident Report and their attached statements. (Doc. No. 46-2, pp. 2, 13-14).

Defendant Bell states in his Affidavit that Plaintiff was beating on the windows and doors of the holding pen in the receiving and discharge area, which caused echoes throughout the area. Defendant Bell asserts he gave Plaintiff several orders to stop his disruptive behavior, but he refused to do so. Defendant Bell also asserts Defendants Chauncey and Montgomery came to the receiving and discharge area to escort Plaintiff back to his cell, and Plaintiff came toward him (Defendant Bell) "in an aggressive manner." (Doc. No. 46, Ex. B, ¶ 3; Doc. No. 46-2, p.15). Defendant Bell asserts Defendants Chauncey and Montgomery "restrained and secured" Plaintiff without any help from him "to regain positive control" of Plaintiff. (Id.) In Defendant Bell's estimation, Defendants Chauncey and Montgomery used only the amount of force necessary to regain positive control of Plaintiff. (Id. at ¶ 5).

Defendants also submitted the Affidavit of Susan McKinney ("McKinney"), who was working as the Identification Clerk on the day in question. According to McKinney, she opened the door to the receiving and discharge area for Defendants Chauncey and Montgomery. McKinney states she saw Plaintiff "snatch away" from Defendant Chauncey and run toward the receiving security door. However, McKinney also states she could no longer see what was happening once Plaintiff went behind the door. (Doc. No. 49, ¶ 3).

Plaintiff submitted Informal Grievance Number 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 two days after the use of force incident. In this grievance, Plaintiff contends Defendants Chauncey and Montgomery assaulted him while he was handcuffed behind his back, which caused him to suffer severe injuries. (Doc. No. 46-3, p. 4). Plaintiff followed up his informal grievance by filing Formal Grievance Number 544414. Plaintiff states that he told Defendant Bell that the reason he was beating on the door and windows of the holding cell was because that was the only way he could get Defendant Bell's attention to tell Defendant Bell he was having difficulty breathing. Plaintiff also states Defendant Chauncey offered to "take care" of Plaintiff on Defendant Bell's behalf and that, in "a split second [Defendant] Chauncey '[sucker] punched'" him on the right side of his face with a closed fist, knocking him to the ground. (Id. at pp. 6, 20). Plaintiff further states that Defendants Chauncey and Montgomery stomped and kicked him. Plaintiff asserts in his grievance that he received injuries as a result of this use of force, including a "busted and bleeding" right eye, a bruised, sprained right wrist and shoulder, and a "busted" upper lip. (Id. at p. 6).

After the use of force incident, Plaintiff was taken immediately to the medical unit for an examination. This examination revealed Plaintiff had swelling and discoloration to his right eye orbit, a 1.5 inch cut to his right brow area, a quarter-sized scrape on his right shoulder with decreased range of motion, and swelling to his right wrist with decreased range of motion. Plaintiff received four (4) stitches for the cut above his right brow area. (Doc. No. 46-7, pp. 15-16; Doc. No. 51, Ex. D, pp. 1-3). Dr. Jones referred Plaintiff to an orthopedic consultation for Plaintiff's sprained right shoulder, and the x-ray taken the day after the use of force incident was negative. (Doc. No. 46-6, pp. 24, 27).

Dr. Paul Lorenzen, an orthopedic surgeon, noted Plaintiff had a swollen area around his wrist and diagnosed Plaintiff as having a bruise on his wrist. (Id. at 25). Prison medical staff ordered that Plaintiff get a splint for his right wrist and a sling for his right shoulder. (Doc. No. 46-5, pp. 1-2, 6).

In a Memorandum written by Hugh Smith, the Warden at Georgia State Prison at the relevant time, which was sent to Derrick Schofield, the Director of the Office of Investigations and Compliance, Smith stated he received a written statement from Plaintiff regarding the use of force incident in which he alleged Defendant Chauncey struck him in the face with a closed fist and that Defendant Montgomery kicked him while he was on the floor. (Id. at pp. 8, 10).

The evidence before the Court indicates there are genuine issues of material fact in existence which require resolution by a trier of fact. The evidence presents a conflict between Defendants' version of the facts and Plaintiff's version. The trier of fact must resolve whether Defendants Chauncey and Montgomery used reasonable force against Plaintiff because Plaintiff attempted to break away from them to assault Defendant Bell or whether Defendants Chauncey and Montgomery maliciously used force against Plaintiff without justification. The trier of fact must also resolve whether the injuries Plaintiff received as a result of this use of force incident were in line with Defendants Chauncey's and Montgomery's contention they used a minimal amount of force or with Plaintiff's contentions that Defendants Chauncey and Montgomery punched, stomped, and kicked him and subjected Plaintiff to an excessive amount of force. Defendants Chauncey and Montgomery are not entitled to summary judgment on Plaintiff's excessive use of force claim.

## II. Failure to Intervene

Defendant Bell contends Defendants Chauncey and Montgomery were able to regain control of Plaintiff without any help from him. Defendant Bell also contends Defendants Chauncey and Montgomery did not use excessive force against Plaintiff, so it was not necessary for him to intervene on Plaintiff's behalf. Defendant Bell further contends that he would have intervened on Plaintiff's behalf had there been a need to do so.

In response, Plaintiff asserts Defendant Bell watched while Defendants Chauncey and Montgomery stomped and kicked him. Plaintiff alleges Defendant Bell shouted, "I don't care if you all kill [him]." (Doc. No. 50, p. 2).

The law of this circuit is that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance. Therefore, an officer who is present at such a beating and fails to intervene may be held liable though he administered no blow." Velazquez v. City of Haileah, 484 F.3d 1340, 1341-42 (11th Cir. 2007) (internal citations omitted). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir. 2000).

Defendant Bell asserts Defendants Chauncey and Montgomery used only the amount of force necessary to regain positive control of Plaintiff after Plaintiff attempted to go toward him in "an aggressive manner." (Doc. No. 46, Ex. B, ¶¶ 3, 5). Defendant

Bell also asserts Defendant Chauncey did not punch Plaintiff in the face and that no one kicked Plaintiff while he was on the floor. Defendant Bell further asserts Plaintiff was not physically abused, and, accordingly, there was no need for Defendant Bell to intervene on Plaintiff's behalf. Finally, Defendant Bell contends that, had he seen anyone abusing Plaintiff, he would have stopped the abuse. (Id. at ¶ 5).

Plaintiff stated in his Informal Grievance that Defendants Chauncey and Montgomery assaulted him while Defendant Bell stood by and watched. (Doc. No. 46-3, p. 4). In his Formal Grievance, Plaintiff described an alleged assault by Defendants Chauncey and Montgomery in greater detail than he had in his Informal Grievance. According to Plaintiff, Defendant Bell stood by while he was being assaulted and shouted, "I don't care if you kill" him to Defendants Chauncey and Montgomery. (Id. at 6).

Because there are genuine issues of material fact as to whether Defendants Chauncey and Montgomery subjected Plaintiff to an excessive amount of force, there are likewise genuine issues of material fact as to whether Defendant Bell witnessed an unreasonable use of excessive force incident, had the opportunity to intervene on Plaintiff's behalf, and failed to do so. Defendant Bell is not entitled to summary judgment on Plaintiff's failure to intervene claim.

### III. Retaliation

Defendants Chauncey and Montgomery contend the actions they took against Plaintiff were a direct result of Plaintiff's "disruptive and insubordinate behavior prior to and during his attempted attack on [Defendant] Bell." (Doc. No. 45, p. 18). Defendants deny retaliating against Plaintiff for filing grievances and writing letters against them.

Defendants allege that, if their actions were based on a retaliatory motive, Defendants Chauncey and Montgomery would not have taken Plaintiff to the medical unit immediately after regaining control of him.

Plaintiff contends Defendants Chauncey and Montgomery retaliated against him because he exercised his First Amendment rights. Plaintiff contends he filed an informal grievance against Defendant Montgomery because he threatened Plaintiff approximately four (4) days prior to the use of force incident. Plaintiff asserts he told Defendant Montgomery he was going to file a grievance against him, and Defendant Montgomery told Plaintiff he would assault Plaintiff if he did. Plaintiff contends Defendant Chauncey approached him the day before the use of force incident and threatened to assault him if Plaintiff wrote another letter about him and because Plaintiff filed a grievance against Defendant Montgomery. Plaintiff alleges the only reason Defendants Chauncey and Montgomery took him to the medical unit after the use of force incident was because they wanted to conceal their actions and to write false disciplinary reports against him.

"To state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal citations omitted). Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." Id. A prisoner can establish retaliation by demonstrating that the prison official's actions were "the result of his having filed a grievance concerning the conditions of his imprisonment." Id.

Once a defendant moves for summary judgment, "the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify

affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El v. Britton, 523 U.S. 574, 600 (1998). The issue of intent is a question for the trier of fact. Direct evidence of an illegal motive will usually suffice to create a genuine issue of fact and preclude summary judgment. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995) (citing Swint v. City of Wadley, Ala., 51 F.3d 988, 1000 (11th Cir.1995)).

In their Affidavits, Defendants Chauncey and Montgomery deny retaliating against Plaintiff because he filed a grievance against Defendant Montgomery or because he wrote a letter complaining about Defendant Chauncey's alleged actions. Defendant Montgomery contends the actions he took against Plaintiff on January 24, 2006, were in direct response to Plaintiff's "aggressive and threatening moves towards [Defendant] Bell." (Doc. No. 46, Ex. A, ¶ 7). Defendant Chauncey also states his actions on this date were in direct response to Plaintiff's "aggressive and threatening moves towards [Defendant] Bell and [Plaintiff's] refusal to obey my direct orders to stop his disruptive behavior." (Doc. No. 46, Ex. C, ¶ 6).

A Disciplinary Report was filed against Plaintiff[1] in which he was charged with insubordination and failure to follow instructions. After a hearing, Plaintiff was found guilty of both charges and given six (6) months' "Disseg" for each charge and 60 days' phone restriction for the insubordination charge. (Doc. No. 46-3, p. 25).

In support of his contention that Defendants Chauncey and Montgomery used an excessive amount of force against him because he exercised his First Amendment rights, Plaintiff submitted a copy of Informal Grievance No. 517-06-178. In this Informal

---

[1] Another Disciplinary Report (D-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) was filed against Plaintiff for insubordination and failure to follow instructions, but this Report was dismissed because it was duplicative of D-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. (Doc. No. 46-3, p. 24).

Grievance, which is dated four (4) days prior to the use of force incident, Plaintiff contended Defendant Montgomery came to his cell and threatened to kill him. This grievance was rejected on January 23, 2006, because Plaintiff had filed too many grievances for that week. (Doc. No. 51, Ex. E). Plaintiff also submitted a letter to Steve Dupree, the SMU Manager, which is dated the day before the use of force incident. In this letter, Plaintiff stated Defendant Chauncey approached him and told him he heard Plaintiff filed a grievance against Defendant Montgomery. Plaintiff also stated Defendant Chauncey told him he would assault Plaintiff if he did not drop the grievance against Defendant Montgomery. (Doc. No. 51, Ex. F).

In his Verified Complaint, Plaintiff asserts he told Defendant Montgomery he was going to file a grievance against him and that Defendant Montgomery told him he "would surely kick [his] ass." (Compl., ¶ 35). Plaintiff also asserts Defendant Chauncey threatened to assault him on the day Plaintiff wrote the letter to Steve Dupree if Plaintiff wrote another letter about him and if Plaintiff went forward with the grievance he filed against Defendant Montgomery. (Id. at ¶ 36).

Plaintiff sets forth evidence from which a rational trier of fact could determine that Defendants Chauncey and Montgomery retaliated against him (by allegedly assaulting him and filing false disciplinary reports against him) based on their purported knowledge that Plaintiff had filed a grievance and a letter complaining about their alleged threats just four (4) days and one (1) day prior to the use of force incident. Defendants Chauncey and Montgomery are not entitled to summary judgment on Plaintiff's retaliation claim.

## IV. Eleventh Amendment Immunity

Defendants assert that, to the extent Plaintiff has sued them in their official capacities, they are immune from Plaintiff's monetary damages claims based on the Eleventh Amendment. Plaintiff asserts he sued Defendants in their individual capacities.

The Eleventh Amendment protects states from being sued in federal court without their consent. Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). A lawsuit against state officials in their official capacities is no different from a suit against a state itself; such defendants are immune. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). In enacting 42 U.S.C. § 1983, Congress did not intend to abrogate "well-established immunities or defenses" under the common law or the Eleventh Amendment. Id. at 67. Because the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities, the Eleventh Amendment immunizes them from suit in their official capacities for monetary damages. Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). To the extent Plaintiff seeks to hold Defendants liable in their official capacities as prison officials at Georgia State Prison, Defendants are entitled to summary judgment on Plaintiff's monetary damages claims pursuant to Eleventh Amendment immunity.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment be **GRANTED** in part and **DENIED** in part. It is my **RECOMMENDATION** that Plaintiff's monetary damages claims against Defendants in their official capacities be **DISMISSED**. Plaintiff's claims against Defendants in their individual capacities should remain pending.

**SO REPORTED** and **RECOMMENDED**, this 9th day of February, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE